## Aurora Gas Light Co. v. Julia A. Bishop.

1. CARE—*Corporations Dealing with Dangerous Elements.*—Where a corporation, for commercial profit, deals with a dangerous agent, the degree of care devolving upon it is proportional to the dangers which it is its duty to avoid.

2. GAS COMPANIES—*Exercise of Care and Diligence to Avoid Injury.*

—In the operation of its business a gas company is bound to · exercise such care and diligence as to avoid injury to the health and property of others by the escape of gas.

3. SAME—*Injuries to Adjoining Property.*—If injury is done to adjoining property because of the imperfect manner in which gas pipes are laid, or because of failure to repair breaks, whether caused by its own fault or that of another, the injured property owner has a right of action to recover for all damages sustained.

4. SAME—*Notice of Defects in Pipes.*—In case of a break, if it occurs through its own fault, the company is liable without notice; if it occurs through the fault of another, liability attaches as soon as the company has had notice and time to repair.

**Action on the Case,** to recover damages for injuries sustained by an explosion of gas. Trial in the Circuit Court of Kane County; the Hon. GEORGE W. BROWN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

**Statement of the Case.**—This was an action in case, brought by appellee, to recover damages from appellant for injuries sustained by a building owned by her in the city of Aurora, through an explosion of gas caused, as alleged, by the negligence of appellant.

The four counts of the declaration charge in substance that the appellant was the owner of certain gas mains along Fox street in the city of Aurora, at or near the corner of Broadway, and in front of the premises in question belonging to appellee; that appellant allowed its said gas mains along Fox street, to become broken and out of repair, by means of which the gas escaped from said mains, through the ground and into the basement of the premises owned by appellee; that on March 20, 1894, servants of appellant, in searching for a leak in said mains, negligently applied a lighted match or torch to the escaping gas in Fox street; that said lighted torch or match ignited the gas and the flame therefrom was communicated to the basement of the building of appellee, which was filled with gas escaped from said broken gas mains, and an explosion thereby caused; by means whereof, the said premises of appellee were severely and permanently damaged, etc.

A plea of the general issue was filed, and on trial, the jury

returned a verdict for plaintiff for $350. A motion for a new trial was overruled and judgment was entered for the amount of the verdict.

It appears from the evidence that in the winter of 1893-4, the city of Aurora constructed a system of sewers. These sewers extended along Fox street in front of the premises in question, and also along Broadway, at the side of said premises. On Fox street in front of said premises, and extending for the length of the block, there had been an old private sewer, just south of the street car tracks, the latter being located in the center of the street. The city in constructing its sewer along Fox street in the block in which said premises are located, did not put the same in the center of the street, but dug up the old private sewer south of the center, sunk the old trench deeper and laid the new sewer in it. The appellant had its gas mains extending along the same street as the sewer, the particular gas main in question being located immediately south of the tracks of the street railway company and just north of the new sewer. From these gas mains the service pipes of the gas company extended to all the stores and business blocks on each side of the street. When the sewers were constructed along these streets none of the gas mains were torn up, but the sewers crossed the service pipes extending from the gas main to the buildings on the south side of the street.

After the trenches were dug and the sewers laid, the mass of dirt taken out, which had in the meantime, by reason of the severely cold weather, become frozen, and was mixed with rock, was thrown back into the trenches. Afterward, when the dirt thawed out, the whole body of it gradually settled in the trenches and carried with it the service pipes connecting the gas mains with the building. The result was that in some places the service pipes were cracked or broken, in others the service pipes being stronger, were pulled away from the gas mains at the joints, and in still other places the mains themselves were broken and cracked. The gas which escaped from the broken pipes penetrated the basements of the buildings situated along the streets,

and in places found its way to the surface of the ground. The gas which came to the surface of the ground was sometimes ignited by sparks from the wheels of the electric cars. On the morning of the accident in question, and up to the time of the explosion, one of these fires was burning at the corner of Fox street and Broadway, near the premises in question. On the second day before the accident, appellant had received notice from the owner and tenant of the premises in question, that there was gas in the building. The company at once proceeded to locate and repair the leaks. On the afternoon prior to the accident, these leaks had been repaired and the odor of gas had disappeared from appellee's building. About ten o'clock on the evening of the same day Mr. Copley, the manager of the appellant gas company, detected a strong odor of gas at the corner of Fox street and Broadway, and immediately returned to the company's office and entered an order in the "complaint book" to his men, to locate and repair the leak.

The tenant of appellee's building discovered the odor of gas in his store about eight o'clock in the morning of the day of the accident, and sent word to this effect to the gas company, but this information was not communicated by appellant to the men, who had obeyed the order of the superintendent, and were at work on the street in that block. In searching for the leak in the gas main, the employes of the company dug or drilled a hole with a crow bar in the street a short distance west of appellee's premises, and applied a lighted match or torch to the same, to discover whether or not gas was escaping. When the light was applied an explosion immediately took place in the basement of appellee's building, which caused the injury complained of.

At the time of the explosion there was in the areaway in front of the basement of appellee's premises, an old, unused water closet, which had formerly been connected with the old sewer above mentioned. There was no trap in this sewer connection, and even if there had been, there was no water to fill it, and it had been unused for a long time. After the construction of the new sewer, the old sewer con-

nection was allowed to remain open. After the explosion there was evidence that the gas which caused it had come in through this sewer connection, and gas was in fact still flowing through it into the basement. The leak from whence the gas came, was caused by a break in the gas main itself, nearly in front of defendant's premises, which was soon afterward discovered and repaired.

ALSCHULER & MURPHY, attorneys for appellant, contended that in a damage suit involving the question of negligence, it must now be shown by the proof:

First. That the defendant was guilty of the negligence which caused the accident and injury complained of. To state the same proposition in another form, it must be shown by the proof that the defendant was guilty of a lack of ordinary care and caution to such an extent that such lack of ordinary care and caution caused the accident and injury.

Second. It must be further shown by the proof that the plaintiff himself was free from negligence; that his negligence did not cause the accident and injury, and did not concur with that of the defendant or other parties in causing said accident or injury.

Unless each of these propositions are shown by the proof there can be no recovery by the plaintiff. L. S. & M. S. R. R. Co. v. Hessions, 150 Ill. 546, City of Lanark v. Dougherty, 153 Ill. 163; Calumet Elec. Street R. R. Co. v. Nolan, 69 Ill. App. 104; West Chicago Street R. R. Co. v. Boeker, 70 Ill. App. 67.

ALDRICH, WINSLOW & WORCESTER, attorneys for appellee.

The breaking of a gas pipe and the consequent escape of gas, whereby one is injured, are facts from which the jury may infer negligence on the part of the gas company. See Carmody v. Boston G. L. Co., 162 Mass. 539, 39 N. E. Rep. 184; Lewis v. Boston G. L. Co., and Goodnow v. Boston G. L. Co., 43 N. E. Rep. 178; Consolidated Gas Co. v. Crocker, 31 L. R. A. 785.

The company is responsible for what may, in the nature of things, occur from its negligence, and its responsibility is not limited by what its officers may have thought to be improbable. Oil City Gas Co. v. Robinson, 99 Pa. St. 1; Butcher v. Providence Gas Co., 34 Am. Rep. 626; Emerson v. Lowell Gas Light Co., 3 Allen (Mass.), 413; Ohio Gas Co. v. Andrews, 29 L. R. A. 337. See also Koelsch v. Philadelphia Co., 152 Pa. St. 355, 18 L. R. A. 759; Smith v. Boston G. L. Co., 129 Mass. 318; Moore v. Hastings & St. Leonard's G. Co., 4 Foster & Finlason, 324; Pine Bluff Water & Light Co. v. Schneider (Ark.), 34 S. W. Rep. 549; Railroad Co. v. Connery, 33 S. W. Rep. 426; Pine Bluff W. & L. Co. v. McLain (Ark.), 34 S. W. Rep. 549; Louisville Gas Co. v. Gutenkuntz, 82 Ky. 432; Oil City Gas Co. v. Robinson, 99 Pa. St. 1; Bartlett v. Boston G. L. Co., 122 Mass. 209; Shearman and Redfield on Negligence (3d Ed.), Sec. 336; Emerson v. Lowell Gas Light Co., 3 Allen (Mass.), 410.

The rule of contributory negligence has no application unless the negligence of the plaintiff was really contributing to the injury—unless it was a proximate cause of the injury. C., B. & Q. R. R. Co. v. Dougherty, 12 Ill. App. 181. See also Lindsey v. Danville, 45 Vt. 72; Stiles v. Geesey, 71 Pa. St. 439; Robinson v. N. Y. C. & H. R. R. R. Co., 66 N. Y. 11; Kan. P. Ry. Co. v. Brady, 17 Kas. 380; Hackett v. Middlesex Co., 101 Mass. 101; Cleveland, C., C. & I. R. R. Co. v. Elliott, 28 Ohio St. 340; Hammond v. Mukwa, 40 Wis. 35; Herrick v. Sullivan, 120 Mass. 576; Johnson v. Canal & Claiborne R. R. Co., 27 La. Ann. 53.

Mr. Justice Higbee delivered the opinion of the court.

No error in connection with the instructions or in the admission or rejection of evidence is urged or pointed out by counsel for appellant. There is little, if any, conflict in the evidence, and the only question presented is whether or not the facts stated, constitute a cause of action. Counsel for appellant insists that appellee was not entitled to recover, because, first, the evidence does not show that the defendant

was guilty of any negligence which caused the accident and injury complained of; second, because the evidence shows that the appellee was guilty of negligence contributing to the accident.

The second count was based upon the fact which appeared from the evidence, that the gas flowed into the basement through the pipe which had formerly connected the now unused water closet with the old sewer. It is urged that appellee was guilty of negligence in permitting the same to remain open and in not informing the employes of appellant of its location and condition.

There is no evidence that appellee or her tenant knew of the broken sewer connection, but even if they were charged by law with notice, we do not think they would be guilty of negligence contributing to the accident, in not notifying appellant's employes of its existence. Appellee could not have anticipated that the breaking of the connection with the old sewer could, in any manner, have contributed to so unprecedented an accident as the one in question. Neither was appellee guilty of contributory negligence in not giving notice of the gas in the building to the employes of appellant, who were engaged in searching for leaks in the street. Her tenant, about an hour before the accident, did, in fact, send notice to the office of the company, which was located only two blocks away.

The question remains, then, to be considered, whether defendant was guilty of negligence, causing the accident. A number of expert witnesses were introduced on behalf of appellant, who testified that the method pursued by appellant's employes in searching for leaks, was the one universally used by gas companies, and that they never knew an accident to happen from applying a lighted match or torch to a hole drilled in the ground near a leak in a gas main, before the one in question.

We are therefore of opinion that there was no negligence on the part of appellant's employes in applying the light at the time and place in question, but that fact does not relieve appellant from responsibility. "In the operation

of its business a gas company is bound to exercise such care and diligence as to avoid injury to the health and property of others by the escape of gas. For commercial profit it deals with a dangerous agent, and the degree of care devolving upon it, should be proportional to the dangers which it is its duty to avoid. If injury is done to adjoining property because of the imperfect manner in which pipes are laid, or because of failure to repair breaks, whether caused by its own fault or that of another, the injured property owner has a right of action to recover for all damages sustained by him. In case of a break, if it occurs through his own fault the company is liable without notice. If it occurs through the fault of another liability attaches as soon as the company has had notice and time to repair." Rockford G. L. & C. Co. v. Ernst, 68 Ill. App. 300; Emerson v. Lowell Gas Light Co., 3 Allen, 410.

Appellant had notice of the defective condition of its mains long prior to the date of the accident in question. There were numerous breaks all over the city, where the sewer had been constructed, and in the single block on Fox street, where appellee's premises were located, there had already been thirteen breaks in the main. The gas was continually permeating the basement of the adjoining buildings, and escaping to the surface of the ground, where it burned for weeks at a time. Property owners were unable to protect themselves from the inconvenience and dangers of the situation. Appellant was dealing with a dangerous agent. It had the use of the public streets for its mains and service pipes to conduct that agent to the places where needed. It was therefore its duty to protect the public as far as possible from all dangers attending the use of the same. In Smith v. Boston Gas Light Co., 129 Mass. 318, it was said : " The defendant was authorized by law to lay down pipes and convey gas under the surface of the public streets and was bound to use proper care and prudence in the conduct of its business, having reference to the delicate and dangerous character of the material in its charge. It was especially bound to exercise this care in the proper location,

structure and repair of the pipes, so that there would be no escape of gas dangerous to life and health."

But it is contended here that the appellant should not be held to the same strict accountability with which it would otherwise be charged, for the reason that the breaks were caused by the negligent manner in which the city filled the sewer trench and the consequent settling of the earth in the same.

The case of Butcher v. Providence Gas Co., 12 R. I. 149, was, in some respects, similar to the one under consideration. In that case the injury complained of occurred through the escape of gas from mains alleged to have been damaged by the city of Providence in the construction of a sewer. It was there contended by the defendant that it was the fault of the city, whose officers, in putting in a sewer, had not packed the dirt properly, and that the subsequent settling of the dirt had broken the defendant's pipe. The court, however, upheld an instruction to the effect that, if others than the defendant were at work around the pipes, a new duty was imposed on defendant to guard against the want of care in the others, and to use proper care in remedying defects caused by such want of care. It is said in the course of the opinion : " The defendant, in managing a dangerous element, was bound not only to due care on the part of itself and its servants, but also to due care in preventing injury from the careless or wrongful meddling with its works on the part of others. They could not interfere with or prevent the city from building a sewer; but they had a right to and were bound to see that in restoring the earth to its place, their own pipes were properly supported, and if injured, to see that the injury was repaired as soon as it could reasonably be done." See also Koelsch v. Philadelphia Co., 152 Pa. 355.

In this case appellant must have known that the location of the sewer trench across its service pipes and the manner in which the same was filled in by the city, could not but result in injury to its pipes. It was therefore its duty to see that its pipes were properly protected from injury. Failing

in that duty, appellant must be held responsible for such damages as result to the property of others by reason of such neglect.

We are of opinion the facts in the case, as developed by the evidence, fully sustain the verdict and the judgment entered thereon. The judgment will therefore be affirmed.