Weber, Administratrix, Respondent, vs. Interstate Light & Power Company, Appellant.

*December 9, 1954—January 11, 1955.*

For the appellant there were briefs by *Ramsdell, King & Carroll* of Eau Claire, and oral argument by *George Y. King*.

For the respondent there was a brief by *Thomas J. O'Brien* of Hudson, and *Thoreen, Thoreen & Lawson* of Stillwater, Minnesota, and oral argument by *Mr. O'Brien* and *Mr. John D. Thoreen*.

FAIRCHILD, C. J. From the evidence there is no question but that the valve in the stove of the Hoyt cottage had been faulty for some time and was the cause of the explosion. It was found to be defective at the threads and after the explosion was cracked wide open. It was the only valve, even after the explosion, which was cracked.

The rule with respect to leaks from appliances of a customer has been quoted from *Miller v. Wichita Gas Co.* 139 Kan. 729, 732, 33 Pac. (2d) 130, 132, in the recent case of *Bellefuil v. Willmar Gas Co.* (Minn.), 66 N. W. (2d) 779, 783: " 'A gas company is guilty of negligence if a leak in a customer's pipes and appliances causes injury to persons or property, provided the company has sufficient notice of such leak or leaks, and having such notice (a) negligently inspects or negligently repairs; (b) agrees and assumes to inspect and repair, and then fails to do so; (c) refuses to inspect and repair knowing a dangerous condition exists, and with such knowledge fails to shut off its gas until the owner can have his pipes and appliances properly repaired.' "

All of the authorities support the view that gas is a dangerous agent and that it is the duty of a gas company to take a high degree of care to avoid injury and damage resulting from its escape.

"A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life and business, which involve little or no risk of injury to persons or property. Therefore, in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent damage commensurate to the danger which it is its duty to avoid, even though this degree of care may extend the requirement in that behalf slightly beyond the general rule with respect to the exercise of ordinary care to avoid such dangers only as are reasonably to be anticipated in the conduct of a particular business." 38 C. J. S., Gas, p. 732, sec. 42.

In the instant case, it is to be noted that the type of gas furnished by defendant was of a particularly dangerous character, being twice as forceful as coal gas.

The only issue on this appeal is whether or not the gas company had sufficient notice of the danger existing to require it to exercise that degree of care consistent with its duty.

"It is of the essence of negligence that the person charged should have knowledge that there was a duty for him to perform; knowledge of the facts out of which the duty to act arises is essential; in order that an act or omission may be regarded as negligent, the person charged must have knowledge or ought to have known from the circumstances that the act or omission charged involved danger to another." *Moen v. Madison Railways Co.* 199 Wis. 168, 170, 225 N. W. 821.

Ethel Hoyt moved into the Anderson cottage in March, 1952. Her meter was cut in for service May 2, 1952. Mrs. Anderson, the landlady of Ethel Hoyt, testified she had talked with her in the early winter of 1953 about her gas bills, and had called the defendant's office and said that Ethel Hoyt had complained to her about the gas bills at the cottage being too high; that she had done this several times and at

one time had talked to John Clark and told him the same thing. Clark was one of the men in charge of the gas system in Hudson in January, 1953, and he had complete charge after February 1, 1953. About February 1, 1953, decedent, Ethel Hoyt, complained to Clark about her gas consumption because she thought it was too high. Clark was the serviceman and in charge of the Hudson gas system after February 1, 1953. On February 20, 1953, Mrs. Anderson told Clark that Miss Hoyt had complained of a "funny smell." Also on February 20, 1953, Miss Hoyt left word at defendant's office ordering her gas service discontinued. It was not shut off, and on March 20, 1953, a Mr. Hemenway, a meter reader for the gas company, notified John Clark that something was wrong at the Hoyt cottage when he saw, that, in spite of the fact that there was a red line on the meter which would ordinarily indicate that it was shut off, there was consumption on the meter.

As to his reason for not shutting the meter off on February 20, 1953, Clark testified to the following effect: "I thought I would have to turn it on again in a short time and I didn't want to go to the trouble of taking the insulation and box off. That had something to do with it, yes." After being notified by Hemenway, Clark testified that he went to the Hoyt cottage that same afternoon and knocked at the door but got no response. He returned the next morning. First he went to the Andersons, and then he went to the cottage. When he got no answer at either place he returned to the office, and he did not come back to the premises until after the explosion. The gas was not shut off.

From the evidence the fact cannot be disputed that the defendant gas company had repeated notices that something was wrong with the gas flow at the Hoyt cottage. It failed to shut off the gas when ordered to do so. There had been regular complaints about high gas bills from the first part of

1953. The meter was on the outside of the cottage, and it was the duty of the gas company, under the existing conditions, to shut off tne gas at the meter until it could be discovered what was causing the unexplained flow of gas. Mr. Clark testified that he did not go into the Hoyt house at any time to inspect the installations.

The evidence supports the findings of the jury, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.