WEBB and others, Appellants, v. WISCONSIN SOUTHERN GAS COMPANY, INC., Respondent.

*March 30—April 27, 1965.*

344

For the appellants there was a brief and oral argument by *Berwyn B. Braden* of Lake Geneva.

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll Metzner*.

HALLOWS, J.   The appellants contend the verdict is contrary to the credible evidence and the trial court was in error in failing to submit requested instructions.

The evidence concerning the explosion was conflicting and the jury accepted the defendant's version of how the accident happened and disbelieved the plaintiffs, which it had a right to do. Viewing the evidence in the light most favorable to the verdict, as we must, there is sufficient credible evidence to support it and the verdict should not be upset on appeal.

*Firkus v. Rombalski* (1964), 25 Wis. (2d) 352, 130 N. W. (2d) 835; *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 120 N. W. (2d) 692. True, there is evidence to support the plaintiffs' version and as they contend the verdict is contrary to such evidence, but that fact alone is not enough to upset the verdict. The test is not what the jury could have found but whether what it did find is supported by sufficient credible evidence. *Estate of Starer* (1963), 20 Wis. (2d) 268, 121 N. W. (2d) 872.

The plaintiffs' home was heated by gas and consisted of several rooms which on the first floor included a bathroom and an adjoining utility room. The utility room could only be entered through the bathroom which was reached from a hallway which opened to the kitchen on one side and to the outdoors on the other. The gas water heater was located in the utility room and a gas space heater in the bathroom. Before the explosion, the door between the utility room and the bathroom was closed.

On the morning of April 3d Mrs. Webb arose about 7 a. m., used the bathroom and there was warm water. Shortly thereafter Mr. Webb used the bathroom, returned to the bedroom and partially dressed. He lit a cigarette and went back to the bathroom and started to open the door to the utility room when the explosion occurred. The space heater and part of one wall of the bathroom were blown into the yard. The door between the bathroom and the utility room was blown into the utility room, the two walls of the utility room were blown out, but the hot water heater was not damaged. There was evidence of charring and burning in the bathroom but not in the utility room.

The plaintiffs tried the case on the theory the pilot light of the gas water heater went out and the automatic shutoff valve failed to shut off the gas to the appliance. The gas water heater, which had a history of sporadic malfunctioning, was an automatic unit equipped with a safety shutoff

valve designed to automatically shut off the flow of gas to the burner whenever the pilot light was extinguished. The vent to the water heater extended outside the house but terminated beneath the eaves of the roof, a type of ventilation which was not recommended and under some wind conditions would cause the pilot light to go out. On several occasions in 1959 and in 1961 service calls were made to service the water heater. On the last call on March 24th, approximately two weeks before the explosion, it was discovered the safety valve was defective and would not shut off the gas when the pilot light went out. This could not be repaired and a new safety valve was ordered. There was some evidence the valve was reassembled defectively and put back into the heater.

Under the defendant's version there was testimony the serviceman had informed a Mr. Terrell, the father of Mrs. Webb who lived in the house, that the water heater should be operated manually until a new safety valve could be installed. Experts testified that in their opinion the explosion took place in the bathroom and not in the utility room. There was some dispute in the evidence of whether the gas space heater in the bathroom was in use. The Webbs testified they rarely used it; however, the space heater had been repaired on a service call when a new coil was placed therein approximately three months prior to the accident. Mr. Webb in giving the history of his injuries told two doctors he was injured by an explosion from a space heater in his home. The evidence was also conflicting on the use of the water heater. The plaintiffs testified they did not operate the heater manually but there is contradictory evidence Mrs. Webb asked her husband to light the hot water heater immediately before the explosion occurred and that was what he was going into the utility room to do. Other witnesses testified the Webbs had told them they were using the hot-water heater manually.

The jury could find that in disregard of the instructions of the defendant's serviceman the plaintiffs were using the gas water heater automatically and the pilot light did go out. But if the plaintiffs were using the gas heater automatically against the instruction of the defendant, there would be no negligence on the part of the defendant but negligence for such use on the part of the plaintiffs. The jury might have found the plaintiffs were using the gas water heater manually and had failed to shut off the gas the night before the explosion and the gas escaped from the appliance when the thermostat called for heat. Either version would sustain the verdict as well as the possibility of an unknown leak in the space heater. However, the defendant did not have the burden of proving how the explosion happened; it need only prove it was not negligent on the plaintiffs' theory of the explosion. In this view the defendant was unable to immediately repair the appliance and instructed the plaintiffs how to use the heater in a safe manner. But the plaintiffs claim this is not the limit of the defendant's duty and the defendant should have shut off the gas because of the defective safety valve and improper venting.

At the trial the plaintiffs requested an instruction on the duty of a gas company adapted from *Weber v. Interstate Light & Power Co.* (1955), 268 Wis. 479, 68 N. W. (2d) 39, to the effect that a gas company is negligent if a defect is present in the customer's pipes and appliances providing it has sufficient notice of such defect and negligently inspects or repairs, or agrees to inspect and repair knowing a dangerous condition exists and then fails to do so, or refuses to inspect and repair knowing a dangerous condition exists and fails to shut off the gas until the owner can have the pipes and appliances properly repaired. In addition a request was made for an instruction on the standard of care required when dealing with a dangerous agency adapted from Wis J I—Civil, Part I, 1020, and an instruction outlining the

duties of a gas serviceman when servicing a customer's appliances. The trial court denied the plaintiffs' request for the instructions based on the *Weber Case* because they were not applicable to the issue but did instruct the jury on ordinary negligence and its relationship to care and vigilance when dealing with a dangerous agency such as natural gas.

We find no error. This case is not one of a leaking pipe or of an appliance ignored by the defendant. There was no issue the defendant negligently inspected or repaired or refused to inspect or repair the hot-water heater. The appliance could not be repaired to work automatically without a new valve. The testimony was to the effect the circumstances did not demand the gas to be shut off completely as the hot water heater could be safely operated manually even with substandard ventilation. Under the circumstances the plaintiffs' claim amounts to the requirement as a matter of law that a gas company must at its peril shut off its gas and not permit a customer to operate a gas appliance manually. We do not understand that to be the law.

The plaintiffs rely on four cases from other jurisdictions, but we do not find them controlling. In *Bellefuil v. Willmar Gas Co., Inc.* (1954), 243 Minn. 123, 66 N. W. (2d) 779, an explosion occurred which was attributable to a defect in an automatic shutoff valve of a hot-water heater. The defendant was held not liable on the ground it had no notice of the defect; it was noted the gas company had a duty to shut off the gas supply whenever it had notice of facts which indicated the likelihood of danger and would prompt a person of ordinary care and prudence to shut off the gas. In *Cleveland Gas Co. v. Woolen* (1947), 30 Tenn. App. 282, 205 S. W. (2d) 754, the water heater was not equipped with an automatic shutoff of which the defendant had knowledge. The gas supply was temporarily interrupted and consequently when the service was resumed the gas freely escaped from the heater into the plaintiff's basement and was ignited when

the defendant's serviceman came to inspect the heater. The gas company was held liable. In *Sternbock v. Consolidated Gas Utilities Corp.* (1940), 151 Kan. 81, 98 Pac. (2d) 162, an explosion occurred due to a leak in the defendant's gas line which was old and in need of repair and liability was predicated upon the company's duty to inspect and maintain its own lines in safe condition. In *Clay v. Butane Gas Corp.* (1949), 151 Neb. 876, 39 N. W. (2d) 813, the defendant was held liable when its distributor filled the plaintiff's tank without checking the gas-line connections in the plaintiff's basement although the distributor knew the plaintiff had disconnected the lines prior to that time.

These cases and others collected in the annotation, 72 A. L. R. (2d) 865, point out the well-established rule that the ordinary care of gas companies requires greater vigilance or effort, sometimes called the higher degree of care, when dealing with gas than under less-dangerous circumstances. In its instructions the trial court correctly pointed out that ordinary care is not a static but a relative concept equated to the degree of care which the ordinarily prudent man customarily exercises under the same or similar circumstances. And, under special circumstances of potentially greater danger of harm, ordinary care is equated to the degree of care customarily used by the prudent people who are usually confronted with such circumstances. The degree of effort, caution, or diligence required of a person to reach or attain the standard of ordinary care necessarily varies with the degree of hazard inherent under the circumstances. The trial court adequately instructed a higher degree of vigilance and caution than in ordinary affairs of life and business was required in dealing with natural gas because of its highly explosive and dangerous character and its tendency to escape its proper containers.

The trial court has discretion in instructing a jury as to matters of emphasis, choice of language, and detail or brevity

so long as it fully and fairly informs the jury of the rules and principles of law applicable to the particular case. *Henrikson v. Maryland Casualty Co.* (1958), 3 Wis. (2d) 379, 88 N. W. (2d) 729. The court should not incorporate into its charge assumptions or positive statements as to facts which are in dispute so as to impress its interpretation of the evidence upon the jury or give undue prominence to the contention of one party without giving equal prominence to the contention of the other party. *Kuklinski v. Dibelius* (1954), 267 Wis. 378, 66 N. W. (2d) 169. Nor need the court give instructions on specific acts of negligence which are not proved or in issue. We find no error in the instructions which the court gave or in its refusal to give the requested instructions.

*By the Court.*—Judgment affirmed.