SAVINA, Plaintiff and Appellant, v. WISCONSIN GAS COMPANY (formerly known as Milwaukee Gas Light Company) and others, Defendants and Respondents: BARBER-COLMAN COMPANY and another, Impleaded Defendants and Respondents.

*October 31—November 28, 1967.*

696

698

For the plaintiff-appellant there were briefs by *Stephen R. Miller* and *Kersten & McKinnon,* attorneys, and *Kenan J. Kersten* of counsel, all of Milwaukee, and oral argument by *Kenan J. Kersten.*

For the defendant-respondent Wisconsin Gas Company there were briefs by *Harrold J. McComas, Timothy R. Casgar,* and *Foley, Sammond & Lardner,* all of Milwaukee, and oral argument by *Mr. McComas.*

For the defendants-respondents Pyromatic Industrials, Inc., and Maurice A. Embertson there was a brief by *Wells & Boyle* and *Howard H. Boyle, Jr.,* all of Beaver Dam, and oral argument by *Howard H. Boyle, Jr.*

For the defendants-respondents Industrial Temperature Controls, Inc., and James Williams there was a brief by *Kivett & Kasdorf,* attorneys, and *James P. Reardon* of counsel, all of Milwaukee, and oral argument by *Mr. Reardon.*

For the impleaded defendant-respondent Barber-Colman Company there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Kurt H. Frauen* and *Thomas N. Klug* of counsel, all of Milwaukee, and oral argument by *Mr. Frauen.*

For the impleaded defendant-respondent Midland Ross Corporation there was a brief by *Ames, Riordan, Crivello & Sullivan* of Milwaukee, and oral argument by *Frank T. Crivello.*

HALLOWS, J.  The gas-fired oven, an appliance about seven feet high, six feet wide and 10 feet long, was used to dry tool housings which are spray painted in the same room.  On top of the oven is located the complicated burner apparatus with various electronic or electrically motivated valves and safety controls and motors.  Air is heated by the burner and then blown into the oven to dry the housings.  The explosion took place in the oven

as plaintiff was pushing a rack of tool housings into the oven on October 2, 1962. Early in the morning the plaintiff and several workers had smelled gas around the oven. The plaintiff had used the oven about an hour and a half before the explosion occurred and this was the ninth rack of housings put in the oven that morning but the first after the plaintiff had taken a work break of about a half hour duration.

In the plaintiff's theory of the case there was a leak in the house pipes and the air blowers carried the gas into the oven or there was a leak within the oven in its controls, burner or valves, but in either event the gas company was liable because it had negligently inspected the piping leading to the oven and had failed to inspect the oven some months before the explosion. The gas company contended the explosion was caused by paint solvent or benzene and not by natural gas, and in addition its responsibility for inspection for leaks did not include an industrial or commercial appliance.

There was evidence that some four to six months before the explosion the gas company was called on a complaint that there was a gas leakage in the spraying and drying room. A liquid-soap test was performed by the gas company on the house pipes leading to the oven but no leak was found and no smell of gas was then detected. The employee of the gas company had an explosimeter but did not use it. There is a dispute in the evidence whether the gas company was again called to inspect for gas leaks. The record also discloses that other defendants had performed work on the various safety controls of the oven and the burner, that the dryer was in poor mechanical condition and that the employer had been advised to have the burner of the dryer rebuilt. On one of the service calls the lighting procedure had been changed.

After the explosion a fuzz leak in a pipe some 15 to 20 feet from the oven was discovered. This allowed less

than one-fourth cubic foot of gas to escape per hour but there was no evidence this leak existed prior to the explosion. There is testimony by workmen that they smelled gas intermittently over a period of time prior to the explosion and on the morning of the explosion.

The jury was asked whether the explosion was caused by natural gas, whether there was a gas-pipe leakage near the drying oven and if so, whether such leakage had existed for a period of four to six months before the explosion, whether the gas company was negligent in not detecting such leakage of gas and whether such leakage was a cause of the explosion. In effect the instructions to the jury restricted the liability of the gas company to the inspection of the gas pipes leading to the oven and excluded the duty to inspect for any leakage of gas in the controls, burner or in the oven itself. The jury found the explosion was caused by natural gas but there was no leakage in the gas pipes near the drying oven.

The plaintiff now complains the form of the verdict question limiting the liability of the gas company to a leak in the pipes and the related limiting instructions were erroneous because the gas company under *Weber v. Interstate Light & Power Co.* (1955), 268 Wis. 479, 68 N. W. 2d 39, had a duty to inspect not only the piping but also the industrial gas-fired drying oven.

These issues cannot be raised as a matter of right as there was no timely objection either to the form of the verdict or to the insufficiency of the instruction and no additional instruction was requested of the court. An objection to the form of a verdict must be made promptly. If counsel knows the form of the verdict prior to the verdict's submission to the jury, he should then object; if no such opportunity is afforded counsel, objection to the form of the verdict should be made before the jury returns its verdict. A party cannot take his chance with the jury and object only if he loses. *Nimits v. Motor*

*Transport Co.* (1948), 253 Wis. 362, 34 N. W. 2d 116; *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. 2d 852; *Martin v. Outboard Marine Corp.* (1962), 15 Wis. 2d 452, 113 N. W. 2d 135. The objection here is not to the validity of the verdict as was the case in *Vroman v. Kempke* (1967), 34 Wis. 2d 680, 150 N. W. 2d 423, where the verdict was void and did not constitute a verdict and thus could not stand whether objected to or not.

An objection to the instructions for inadequacy or insufficiency must also be made at least prior to the return of the verdict. Generally, counsel should timely submit his requested instructions, but if this is not done and the instructions given are not erroneous as a misstatement of the law but are incomplete, it is the duty of counsel to object at the time the instruction is given. *Carson v. Pape* (1961), 15 Wis. 2d 300, 112 N. W. 2d 693; *Grinley v. Eau Galle* (1956), 274 Wis. 177, 79 N. W. 2d 797. Absent proper objections by the plaintiff, these alleged errors in the verdict and the instructions are not before us.

However, the plaintiff argues the instructions were erroneous in misstating the law on the burden of proof and such error was preserved by being used as a ground for a motion for a new trial. *Deaton v. Unit Crane & Shovel Corp.* (1953), 265 Wis. 349, 61 N. W. 2d 552; *Reuling v. Chicago, St. P., M. & O. Ry.* (1950), 257 Wis. 485, 44 N. W. 2d 253. We consider this assignment of error properly raised. It is true the trial judge instructed the jury in respect to question 2 that if it was uncertain from the evidence whether or not there was a leakage of natural gas just before the explosion or if there was leakage and such leakage occurred within the gas-fired burner on the paint-drying oven or in any of its valves, controls or regulators or if it was uncertain whether a gas leakage existed in the gas piping or in the gas burner they should answer the question "No." Objection is made that the use of the word "uncertain" in the instruction

placed a greater burden on the plaintiff than proof to a "reasonable certainty" would.

In this type of civil case the burden of the plaintiff is only to satisfy the jury to a reasonable certainty. The plaintiff is not required to remove all uncertainty. *Kausch v. Chicago & M. E. Ry.* (1922), 176 Wis. 21, 186 N. W. 257; *McGinty v. Brotherhood of Railway Trainmen* (1917), 166 Wis. 83, 164 N. W. 249. However, in instructing generally on burden of proof the court correctly informed the jury that it was to be satisfied or convinced by a fair preponderance of the evidence to a reasonable certainty. The court also instructed the jury on probabilities and that it could not decide on mere possibilities or on speculation or conjecture. Instructions must be judged as a whole and in connection with the questions in the verdict and unless it can be reasonably said that instructions would probably, not possibly, mislead the jury, prejudicial error should not be found. *Kuklinski v. Dibelius* (1954), 267 Wis. 378, 66 N. W. 2d 169; *Field v. Vinograd* (1960), 10 Wis. 2d 500, 103 N. W. 2d 671; *Ide v. Wamser* (1964), 22 Wis. 2d 325, 126 N. W. 2d 59.

Some errors in an instruction are of such nature that they are not cured by the correct statement of law elsewhere in the instructions. Such errors are found in cases of misstatements of substantive law applicable to the main issue in the case. A correct statement in another part of the instruction sometimes does not correct but only confuses the jury. See *Ackley v. Farmers Mut. Automobile Ins. Co.* (1956), 273 Wis. 422, 78 N. W. 2d 744, followed in *Kwosek v. State* (1960), 8 Wis. 2d 640, 100 N. W. 2d 339. However, the true rule is whether in a given case prejudice resulted from the error even though corrected. We think the instructions in the instant case taken as a whole did not mislead or confuse the jury and the error was not prejudicial.

The plaintiff asks this court to exercise its discretionary power under sec. 251.09, Stats., and grant a new trial in the interests of justice; but before this court will exercise its discretionary power, it must be convinced that there has been a miscarriage of justice. This means the evidence and the law must be such that the plaintiff probably should have won and should therefore be given another chance. *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *Dunlavy v. Dairyland Mut. Ins. Co.* (1963), 21 Wis. 2d 105, 124 N. W. 2d 73. On the evidence adduced at the trial, and no claim is made there is any newly discovered evidence, we do not think that a different result would be reached in a new trial. It might well be if a second jury were consistent with the first jury it would find a gas leak within the oven, in the controls or burners, and thus questions would arise whether the gas company had the duty to inspect within the oven, or whether the leak was caused by the negligence of other defendants in repairing the burner, valves or controls of the oven. However, the plaintiff has not appealed from the order dismissing these other defendants and they are out of the case and the plaintiff would be restricted to a claim against the gas company.

We do not read the *Weber Case* as placing an absolute duty on gas companies to inspect industrial and commercial appliances for leaks. In *Weber* we followed the general rule that a gas company in respect to leaking gas was guilty of negligence if a leak in the pipes or appliances of their customers caused injury after the gas company had sufficient notice of the leak and (1) negligently inspected or repaired the appliance or pipe, (2) agreed and assumed to inspect and repair and failed to do so, and (3) refused to inspect and repair knowing of the dangerous condition existing and failed to shut off its gas until the owner could have someone else repair the pipes or appliance. This rule is stated in substantially

the same terms in 26 Am. Jur. 2d, *Electricity, Gas and Steam,* p. 450, sec. 241.

*Weber* involved a household appliance and the cases relied upon likewise involved household equipment. Such appliances are normally and generally sold by gas companies which install and service them. In the instant case we are dealing with a commercial appliance neither sold nor installed by the gas company and having electrical controls which require service by special service companies. The distinction between home and industrial appliances is recognized by the rules of the Wisconsin public service commission which require gas utilities to regularly inspect customers' appliances but expressly except special industrial equipment which should be inspected by persons more familiar with such equipment. This regulation is not, however, the equivalent of stating a gas company has no duty to inspect for leaks in an industrial apparatus when called by the customer.

Certainly the second alternative, negligent repairing of equipment if undertaken, and the third alternative, failure to shut off the gas, of the rule announced in the *Weber Case* apply. See Annot. (1960), 72 A. L. R. 2d 865, *Liability of one repairing, installing, or servicing gas-burning appliance, for personal injury, death, or property damage.* In *Webb v. Wisconsin Southern Gas Co.* (1965), 27 Wis. 2d 343, 134 N. W. 2d 407, we stated the ordinary care of gas companies requires greater vigilance or effort to meet the standard of ordinary care when dealing with gas than under less dangerous circumstances. When a gas company is called on a complaint of leaking gas, it is not required to inspect an industrial appliance in such detail as to determine the exact location of the leak therein or to diagnose the cause of the leak in such appliance. It is sufficient if the gas company determines that somewhere in the appliance there is a leak if that be the fact and notifies the customer

of such finding. The repair of the leak is another matter. In the instant case there is no convincing evidence the gas company undertook to inspect the inside of the oven or its controls or burner for a leak. Nor is there any evidence the gas company was called to make that type of an inspection, but the record is clear the customer knew it was having trouble with the gas appliance. Some four or six months prior to the explosion, the gas company upon inspection found no leak in the house pipes leading to the oven. If the serviceman had discovered evidence of a leak elsewhere, such as the smell of gas, it would be his duty to continue to search for the leak and inspect the appliance or shut the gas off until some expert could inspect the appliance. We do not think it was necessarily negligence for the serviceman not to use the explosimeter in attempting to discover if there was a leak. The evidence does not show its use would have disclosed a leak either in the pipes or in the oven.

Assuming there was a leak or at least escaping gas because workmen smelled gas, it is entirely possible on the evidence of this case that such gas escaped because of the temporary malfunctioning of the controls in the oven. Such malfunction could well be intermittent or sporadic and would account for the lack of a constant escape of gas. To discover such a leak would require expert knowledge of the correct functioning of the apparatus and could well be beyond the competency of the servicemen of the gas company. Again assuming negligence on the part of the gas company in its inspection four to six months before the explosion, still a doubtful question of its being a cause would be presented in view of the nature of the appliance and of the repair work done on the apparatus by others than the gas company. We think the interests of justice do not demand our discretionary reversal.

On its appeal the gas company contends all the costs and disbursements of the other defendants should not

have been assessed against it because a part of them should have been taxed against the plaintiff. The gas company failed to comply with sec. 271.10 (3) and (4), Stats., relating to taxation of costs in not filing with the clerk written objections and further in not asking for a review of the clerk's taxation by the trial court within ten days. The gas company, while admitting no objections were filed, argues it would have been useless to make them and to ask for a review because it had unsuccessfully objected to the court prior to the taxation of costs. Since the taxation of costs and disbursements when cross complaints are involved is within the discretion of the trial court under sec. 271.035, and trial judges have been known to change their minds and even if objections pursuant to sec. 271.10 might not have been successful, we think the failure to properly make objections and to seek a review as required by the statute precludes the raising of the objections on appeal. *Bornemann v. New Berlin* (1965), 27 Wis. 2d 102, 133 N. W. 2d 328; see *Nichols v. United States Fidelity & Guaranty Co.* (1961), 13 Wis. 2d 491, 109 N. W. 2d 131.

Since a new trial is not granted, the question raised by the gas company of error in dismissing its cross complaints against the other defendants is moot and need not be given any consideration in this opinion.

*By the Court.*—Judgment and orders affirmed.