BROWN and others, Plaintiffs, v. WISCONSIN NATURAL
GAS COMPANY and another, Appellants: MACDONALD
(Kenneth), d/b/a MACDONALD EXCAVATING COM-
PANY, Defendant and Respondent: MACDONALD
(Thomas), d/b/a MACDONALD TRENCHING COM-
PANY, Third-Party Defendant and Respondent.

*No. 254.   Argued June 4, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 769.)

339

340

For the appellant Wisconsin Natural Gas Company there were briefs by *Prosser, Wiedabach, Koppa, Lane & Quale, S. C.,* and *Jack R. Wiedabach, John E. Feldbruegge,* and *William P. Croke,* all of Milwaukee, and oral argument by *Jack R. Wiedabach.*

For the appellant Wisconsin Telephone Company there were briefs by *Foley & Lardner, Marvin E. Klitsner, John R. Collins* and *Clarence W. Malick,* all of Milwaukee, and oral argument by *Mr. Klitsner.*

For the respondents there was a brief by *Thomas G. Godfrey, Richard A. Howarth, Jr.,* and *Godfrey, Neshek & Worth, S. C.,* all of Elkhorn, and oral argument by *Thomas G. Godfrey.*

HEFFERNAN, J.

### 1. *Negligence of the Gas Company.*

A gas utility is under a duty to exercise "a higher degree of vigilance and caution than in ordinary affairs of life and business . . . in dealing with natural gas because of its highly explosive and dangerous character and its tendency to escape its proper containers." *Webb v. Wisconsin Southern Gas Co.* (1965), 27 Wis. 2d 343, 350, 134 N. W. 2d 407. *Accord, Weber v. Interstate Light & Power Co.* (1955), 268 Wis. 479, 481, 68 N. W. 2d 39. The initial question to be determined is whether the trial court's finding that the Gas Company violated its duty of care was contrary to the great weight and clear preponderance of the evidence.

The trial court found that the Gas Company had been causally negligent in failing to properly mark its laterals along West Peck Street, so that they could be avoided by

the excavators. The Gas Company does not deny that it would be liable if, in fact, it negligently marked the laterals, but argues that the evidence is insufficient to show that the marking was inadequate.

Whether the lateral at 931 West Peck Street was marked at all is disputed. Thomas E. MacDonald and a number of Telephone Company employees testified that they saw no marks at that location. On the other hand, William Falk, the Gas Company employee who had been assigned to locate the laterals, testified that he located the lateral at 931 West Peck Street by painting a blue mark on the adjacent sidewalk. Other Gas Company employees confirmed that a blue paint mark was visible on the sidewalk when the damaged pipe was dug up after the explosion. The Gas Company argues that the credibility of the Telephone Company employees who testified to the contrary was thoroughly impeached and the testimony of its own employees should be believed.

The credibility of witnesses is, however, peculiarly a matter for the trier of fact. The trial judge did not specifically determine whether or not the lateral had been marked, but found that the lateral had not been "properly" marked. Nevertheless, even if he believed that the testimony showed the lateral had been marked by a paint daub on the adjacent sidewalk, there was sufficient evidence from which the trial judge could have found the Gas Company negligent in failing to "properly" mark the pipe.

Falk also testified that the lateral at 931 West Peck Street was the only one in that block and apparently one of only a few along the whole line of excavation which had not been marked with a stake and the only one he had marked with paint. He testified that he did not use a stake there because the lateral ran alongside a gravel driveway and a stake would likely have been knocked over by passing cars. The Gas Company, however, acknowledges in its brief that there was a likelihood that

the paint mark may have been obscured by loose gravel from the driveway.

The Telephone Company employees who had the job of exposing the laterals testified that they were not told, and did not expect, that a lateral might be marked only with a paint daub on the sidewalk, several feet from the path of the trench. They testified that they were looking only for stakes. Thomas E. MacDonald gave similar testimony. From the record as a whole, it appears that Thomas E. MacDonald and the Telephone Company employees failed to detect the lateral because they were expecting to find the laterals marked with stakes and not with paint marks several feet from the trench line.

There was testimony that the usual practice among other gas companies in that part of the state is to send their own crews to dig up and expose gas lines in areas where others are excavating. In this manner, the laterals could be definitely located for the cable layers. The Telephone Company follows that practice when there is underground work being done in proximity to its own cables. Under these circumstances, the trial court properly found the Gas Company negligent in failing to mark or expose the lateral so that its presence would have been reasonably apparent.

The trial judge also found the Gas Company negligent in failing to inspect its lines and repair any damaged laterals before the Telephone Company filled in the trench. The Gas Company argues that it was under no such duty to inspect, and contends that it was obligated only to check and repair such pipes as were reported by the excavators as having been struck.

The trial judge relied on *Strohmaier v. Wisconsin Gas & Electric Co.* (1934), 214 Wis. 564, 253 N. W. 798. In that case, a contractor, digging in close proximity to gas mains, severed a lateral, gas escaped, and an explosion occurred about thirty minutes later. The gas company

was alleged to have been negligent in failing to have an employee readily available to shut off the gas in case of such a leak. On appeal, it was held that the trial court committed prejudicial error in excluding testimony that the gas company knew that the contractor had previously severed a number of other gas pipes during the course of the same job. This court stated, at page 568:

"Obviously circumstances might exist such as to make it the duty of the Gas Company, in the exercise of ordinary care, to have a man on the job or at immediate call for the purpose of turning off gas upon the breaking of a main or pipe. It is manifest that if the contractor frequently broke pipes in the progress of his work there was more reason for holding that ordinary care required the presence of a man on the job for the purpose stated than if he had been working several months without breaking any pipes at all."

*Strohmaier* tends to support an argument that the Gas Company would have been negligent if it knew that the excavators were frequently striking its gas pipes and nevertheless failed to thereafter put an inspector on the jobsite. It is not, however, dispositive of the issue here.

In this case, the lateral at 931 West Peck Street was the first one struck by the trencher. Although a number of laterals were struck later in the job and were reported to the Gas Company, these subsequent strikes did not occur until after the work on West Peck Street was completed and the trench refilled. Hence, the issue is whether the Gas Company was negligent in failing to inspect the pipes on West Peck Street even though, at the time those pipes were exposed, it had no notice that the trenching crew was not proceeding with due care.

We conclude that the trial judge properly found the Gas Company negligent for failing to inspect its laterals on West Peck Street before they were reburied. The Gas Company was negligent in failing to send a man out to

inspect the pipes when the cable had been laid and the trench was about to be refilled. In view of the extraordinary risks involved in an operation of this kind, the complete failure to inspect was unreasonable and constituted a want of ordinary care.[1]

Several jurisdictions hold that a gas company may be negligent if it fails to use ordinary care to inspect or supervise the work of others digging near its pipes. *New Nueces Hotel Co. v. Sorenson* (1934), 124 Tex. 175, 76 S. W. 2d 488; *Foster v. Capital Gas and Electric Co.* (1928), 125 Kan. 574, 265 Pac. 81; *Koplan v. Boston Gas Light Co.* (1900), 177 Mass. 15, 58 N. E. 183; *Aurora Gas Light Co. v. Bishop* (1899), 81 Ill. App. 493; *Koelsch v. Philadelphia Co.* (1893), 152 Pa. 355, 25 Atl. 522; *Butcher v. Providence Gas Co.* (1878), 12 R. I. 149. The rule is an appropriate one, and we adopt it.

Since we conclude that the Gas Company was negligent in failing to inspect its pipes before they were reburied, it is therefore unnecessary to deal with its argument that the Telephone Company's failure to report striking the lateral was a superseding cause, which excused the Gas Company from liability for its earlier negligence in failing to properly mark the pipe. The negligence of both utilities operated concurrently, with the result that the damaged pipe was never repaired.

On the basis of the evidence, the trial court properly found the Gas Company to have been causally negligent.[2]

---

[1] The Gas Company argues that some significance should be attached to the fact that it did not receive the three-day written notice of the Telephone Company excavation which is required by sec. 66.047, Stats. It is undisputed, however, that the Gas Company had actual notice of the project and made no inquiries to determine when various parts of the trench would be filled.

[2] The Telephone Company argues that the Gas Company should also have been found negligent with respect to the location of the lateral and the failure to utilize a compression coupling to

## 2. *Negligence of the Telephone Company.*

In arguing that the evidence fails to show that its agents were themselves guilty of any negligence, the Telephone Company attempts to disassociate itself from the trenching operation and portrays the trenching job as the sole responsibility of the MacDonalds. In fact, the overwhelming weight of the evidence demonstrates that Telephone Company employees were directly involved in every stage of the trenching operation and were themselves causally negligent in a number of respects.

It was undisputed that Telephone Company employees had been given the job of preceding the trenching machine on West Peck Street to dig out and expose the gas laterals. Thomas E. MacDonald relied on these employees to expose the laterals, so that he could raise his machine over the pipe and continue on the other side. The trench was then dug out by hand around the pipe. It was the responsibility of the Telephone Company employees to reveal the laterals to Thomas E. MacDonald. The Telephone Company employees failed, however, to expose the particular lateral in question, and it was this failure that was responsible for the trenching machine's striking the pipe. It was pointed out above that the trial judge could have believed that the evidence showed that the lateral at 931 West Peck Street had been marked, albeit inadequately, by the Gas Company. There was thus ample evidence to support a finding that the Telephone Company's negligence contributed to the non-discovery of the lateral until it was struck by Thomas E. MacDonald's machine.

---

attach the lateral to the main. Without detailing the voluminous technical evidence adduced by both sides, it is clear that the issue was simply a question of credibility for the trial court. The Gas Company's expert was clearly more qualified than witnesses to the contrary and was believed by the trial judge. His testimony supports a finding that there was no causal negligence with respect to the construction of the gas system in the area of the explosion.

The trial judge also found the Telephone Company negligent in failing to properly notify the Gas Company that the lateral had been struck and probably damaged. Thomas E. MacDonald, as well as other members of the crew, testified that they had been instructed to notify Kelly, the Telephone Company foreman, when they struck a gas pipe. Kelly deposed that he knew that Thomas E. MacDonald had struck the lateral but was unsure whether he or MacDonald had called the Gas Company. MacDonald denied making the call, and Gas Company witnesses denied that they had ever been notified of the striking. Without deciding whether or not the Gas Company had been notified, the trial judge found that Kelly had been negligent in failing to follow up on the matter and make sure that the striking was reported and the damage was repaired. This finding is amply supported by the evidence.

The general rule is that an employer has a duty to inspect the work of his contractor after completion to make sure that it is left in a reasonably safe condition. Prosser, *Torts* (4th ed., hornbook series), p. 469, sec. 71; 2 Restatement 2d, *Torts*, p. 382, sec. 412.[3] Despite the fact that Kelly knew that at least one lateral on West Peck Street had been struck by the trencher, he admitted that he failed to inspect the pipes before the trench was refilled. It was undisputed that the lateral had been badly scarred and bent. There was ample evidence to support the trial court's finding that, had Kelly under-

---

[3] Sec. 412 of the Restatement provides:

"One who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others and who entrusts the work or repair and maintenance to an independent contractor, is subject to liability for bodily harm caused to them by his failure to exercise such care as the circumstances may reasonably require him to exercise to ascertain whether the land or chattel is in reasonably safe condition after the contractor's work is completed."

taken an inspection, he would have realized that the damage had not been repaired.

There was evidence to support the trial court's multiple findings of Telephone Company negligence. The determination that the Telephone Company was causally negligent is not contrary to the great weight and clear preponderance of the evidence.

3. *Negligence of Kenneth and Thomas E. MacDonald.*

The trial judge found that Kenneth MacDonald was causally negligent in failing to take necessary precautions while allowing his inexperienced brother to operate the trenching machine. Thomas E. MacDonald was found negligent in his actual operation of the trencher. Both brothers were found negligent in failing to locate the pipe in question, in failing to properly inspect the gas lines for damage, and in refilling the trench before making sure that any damage had been repaired.

On this appeal, no party disputes these findings of negligence, and we need not review the evidence supporting them.

4. *Apportionment of negligence.*

We have above discussed the negligence of each of the defendants. Each of them was causally negligent. The trial court's findings of negligence are clearly not contrary to the great weight and clear preponderance of the evidence. The apportionment of negligence is, however, sharply criticized, particularly by the Telephone Company. It was found 50 percent negligent, the Gas Company 25 percent negligent, and the MacDonalds, Kenneth and Thomas E., 10 percent and 15 percent, respectively.

The Telephone Company's attack on the apportionment has no basis in the evidence. We can understand, however, the Telephone Company's concern with some lan-

guage of the trial judge in discussing the imputation of negligence. In the trial judge's conclusions of law, he stated that the negligence of Kenneth and Thomas E. MacDonald "would be imputed to the Telephone Company." While such statement, in the nature of a declaration of a nondelegable duty, was not inappropriate when viewed from the perspective of a plaintiff, it would be error to impute the negligence of the MacDonalds, where, as here, the question is not the liability to a third party, but is merely the allocation of fault between joint tortfeasors. If the allocation of 50 percent of the negligence to the Telephone Company were arrived at by adding to its negligence that of the MacDonalds, the allocation would be erroneous. The action in the posture in which it reaches this court is essentially one between joint tortfeasors. While the negligence of an agent will be imputed to his principal in an action between the principal and a plaintiff, the negligence of the agent will not be imputed to his principal in an action between them. *Dombeck v. Chicago, M., St. P. & P. R. Co.* (1964), 24 Wis. 2d 420, 437, 129 N. W. 2d 185; *Archer v. Chicago, M., St. P. & P. R. Co.* (1934), 215 Wis. 509, 515, 255 N. W. 67.

Similarly, it would be error to impute the negligence of one joint venturer, such as one of the MacDonalds, to the other in a suit between themselves; but in a suit by a third party, the negligence of one joint venturer is properly imputed to the other.

Because the brief of the Telephone Company accurately and authoritatively states the law that the imputation of negligence of the MacDonalds to the Telephone Company would clearly be error in respect to the issue before us, we have carefully examined the opinion and findings to ascertain the fact. It is apparent that the trial judge used language from which it might not be unreasonable to infer that he had duplicitously cumulated the negligence of both of the MacDonalds and added that to the

negligence of the Telephone Company. The burden, however, is on the appellant to demonstrate error affecting the apportionment. *Diehl v. Heimann* (1945), 248 Wis. 17, 19, 20 N. W. 2d 556; *Bautz v. Adams* (1907), 131 Wis. 152, 159, 111 N. W. 69. This, the Telephone Company has failed to do.

Our examination of the record makes it apparent that the trial judge only referred to imputed negligence when discussing the rights of a plaintiff against one who is vicariously responsible for the negligence of another. The trial judge's discussion of the imputation of the negligence of the MacDonalds to the Telephone Company is only in conjunction with his exposition of the rights of the plaintiffs. We fail to see any evidence that he imputed the negligence of the MacDonalds to the Telephone Company in that portion of the opinion in which he determined the relative responsibility of the defendants between themselves. In discussing his reasons for making the comparison, the trial judge refers only to the actual negligence of each defendant, without alluding to any negligence that might be imputed to it. The trial judge refers to the "conduct of the defendants," and the "negligence attributable to *each* defendant in proportion to how much the fault of *each* contributed to cause the accident." (Emphasis supplied.)

In respect to the MacDonalds, the trial judge found them to be joint venturers "and that the negligence of one is imputed to the negligence of the other." Again, the trial judge was referring only to vicarious liability to the plaintiffs. Despite the fact the trial judge correctly pointed out the circumstances under which each of the MacDonalds would be vicariously liable for the acts of the other, he allocated 10 percent of the negligence to Kenneth, and 15 percent to Thomas. Clearly, here there was no duplicitousness in apportioning negligence, even though the imputation of negligence in the plaintiffs' suit was clearly expressed.

It is apparent that the same rationale was applied in discussing the negligence of the Telephone Company. The trial judge found that, in respect to the claim of the plaintiffs, the Telephone Company was liable for its own negligence and the negligence of the MacDonalds that would be imputed to it, but he made it clear in his apportionment, that the Telephone Company was 50 percent at fault by virtue of its own negligence, as contrasted to the imputed negligence. A review of the record shows that the evidence supports the apportionment.

The Telephone Company was the principal tort-feasor on the basis of its own negligent acts and omissions. The issue is not before us, but in respect to the plaintiffs' claim, the trial judge would apparently hold the Telephone Company responsible for 75 percent of the apportioned negligence: Its own negligence, plus the negligence imputed to it.

We will not set aside an apportionment of negligence made by either a judge or jury except in the most unusual circumstances evidencing a gross and shocking misallocation, or in the case of demonstrated legal error. We find the allocation reasonable under the facts adduced at trial. Nor has the Telephone Company demonstrated error. On the contrary, we conclude the trial judge made the proper legal distinction between those cases where negligence should be imputed and those cases where it should not be. In the allocation of responsibility between the defendants, he did not impute the negligence of any tort-feasor to another.

### 5. *Indemnity.*

The Telephone Company argues that the trial court erroneously denied it indemnity from the defendant Kenneth MacDonald. Our discussion above highlights the fact that the findings of negligence in respect to the Telephone Company were based solely on its own negli-

gent conduct or omissions and did not include any vicarious liability for the conduct of the MacDonalds.

Since the Telephone Company is not being charged with the negligence of the MacDonalds, the question is whether it is entitled to indemnity for its own negligent acts. The Telephone Company relies on the following provision in its contract with Kenneth MacDonald to establish such a right:

"SIXTH: The Contractor assumes full responsibility for all injuries to, or death of any persons and for damages to property, including property and services of the Company, and for all claims, losses or expenses which may in any way arise out of the performance of the work, whether caused by negligence or otherwise, and the Contractor shall indemnify and save the Company harmless from all claims, losses, expenses or suits for such injuries, death or damages, and from all liens, losses, expenses or claims of any sort which may arise out of the performance of the work, and shall defend, on behalf of the Company, any suit brought against the Company for any such damage, injury or death and shall reimburse the Company for attorneys' fees and for all other expenses incurred by the Company in connection with or as a result of any such suit. The Company may require the Contractor, at the Contractor's own expense, to take out and maintain such public liability and Workmen's Compensation insurance as will provide adequate protection against all such claims and demands. Certificates of such insurance shall, at the request of the Company, be filed with it."

This court has consistently upheld the validity of indemnification agreements. *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 145, 153 N. W. 2d 6; *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. 2d 194, 205, 120 N. W. 2d 95. Such agreements are liberally construed when they deal with the negligence of the indemnitor, but strictly construed when the indemnitee seeks to be indemnified for his own negligence. *Baker v. McDel*

*Corp.* (1971), 53 Wis. 2d 71, 76, 191 N. W. 2d 846; *Algrem v. Nowlan* (1967), 37 Wis. 2d 70, 77, 154 N. W. 2d 217.

The indemnity provision in the contract fails to provide that Kenneth MacDonald must indemnify the Telephone Company for the Telephone Company's own negligence. Under the decisions of this court, such an obligation will not be found by implication. At most, the agreement obligates Kenneth MacDonald to indemnify the Telephone Company for any liability vicariously incurred because of MacDonald's negligence.

In *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 168 N. W. 2d 112, the indemnitor and indemnitee, as in the instant case, were both found to have been negligent. The court stated, at page 55:

> "In this case . . . the injury to the employee was caused by the combined negligence of the indemnitee and the indemnitor. We believe *Algrem* must be construed to hold that the indemnitor is not liable for such portion of the total liability as is attributable to the acts of the indemnitee unless the indemnity contract by express provision and strict construction so provides; and that the indemnitor is liable for such portion of the total liability as is attributable to the indemnitor's acts if provided for without a strict construction of the agreement.
>
> "This in effect is a recovery similar if not identical to contribution."

In the instant case the trial court allocated liability on the basis of actual fault. Since the Telephone Company is not being held vicariously liable (in terms of its obligation to pay 50 percent of the damages), it is not entitled to indemnity on that basis. The trial court correctly concluded that the Telephone Company is not entitled to indemnity for its own negligence in the absence of an express agreement to that effect.

Under these facts, neither is there any right to indemnity on the basis of common law. The Telephone Company's claim under the common law is stated in its brief as being based on the "duty of agents to indemnify their principals for liability the latter incur due to the agent's negligence or other breach of legal duty." The liability imposed by the trial court's apportionment of negligence is based solely on the Telephone Company's own negligence; and the common-law principle correctly stated by the Telephone Company is inapplicable here.

The trial court's findings of negligence and its apportionment among the defendants are supported by the evidence. The court did not err in refusing to order Kenneth MacDonald to indemnify the Telephone Company for its own negligence.

*By the Court.*—Judgment affirmed.