Milwaukee Tank Works, Respondent, vs. Metals Coating Company of America, Appellant.

*March 8—June 18, 1928.*

For the appellant there was a brief by *Fawsett & Shea,* and oral argument by *C. F. Mikkelson,* all of Milwaukee. *Armand J. Tuteur* of Milwaukee, for the respondent.

The following opinion was filed April 3, 1928:

STEVENS, J. (1) The first question presented is whether there was an implied warranty that the device would accomplish the purpose for which it was purchased. It was a special mechanism procured to perform a special service. This fact serves to distinguish the case from those in which the buyer purchases an article which is well known and defined in the commercial world, like a cream separator, a gang plow, or a vacuum cleaner. *La Crosse Plow Co. v. Helgeson,* 127 Wis. 622, 623, 106 N. W. 1094; *La Crosse Plow Co. v. Brooks,* 142 Wis. 640, 643, 644, 126 N. W. 3; *Ohio E. Co. v. Wis.-Minn. L. & P. Co.* 161 Wis. 632, 634, 635, 155 N. W. 112.

"The distinction seems to be between the manufacture or supply of an article to satisfy a required purpose and the manufacture or supply of a specified, described, and defined article. . . . In the former case there may be an implied warranty, but in the latter there is none." *Milwaukee B. Co. v. Duncan,* 87 Wis. 120, 125, 58 N. W. 232.

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on

the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." Sub. (1) of sec. 121.15 of the Statutes. This statute is declaratory of the common law that has been in force since Wisconsin became a state. *Getty v. Rountree, 2* Pin. 379, 388.

The jury found that the plaintiff did not rely upon the skill and judgment of the defendant in making the lease for the device. The court changed this answer and held that there was an implied warranty.

The officers of the plaintiff Tank Works did not make the lease until they had an opportunity to see the device in operation and asserted that they would not make the lease until they had satisfied themselves that it was what they wanted. But it appears from an examination of the device that it is a complicated and delicately adjusted mechanism which was procured to accomplish a definite purpose which was known to both parties when the lease was signed. As was said by this court more than a half century ago, with reference to a much less complicated device—a fanning mill,—nothing short of an actual trial or experiment would determine whether the device would perform the work for which it was procured. "As well might an unskilled person be required to ascertain and take notice at his peril whether a watch will keep time by looking at its cases or machinery and the parts of which it is composed, when in treaty with the manufacturer for it, and when the manufacturer knows it is wanted to keep time, and sells it for that purpose, and receives a fair price for a good article. It would be a strange doctrine to apply to such a case, if the watch turned out upon trial to be worthless, that the purchaser's eyes were his guide, and he himself the judge from mere inspection, and that the manufacturer could retain the price, giving nothing for it in return. Such is not the law, and clearly never ought to be. The defendant here had the right of actual experiment with the fanning mill after he took it into his posses-

sion, in order to ascertain its working qualities, and was not precluded from relying on the implied warranty because he saw the mill at the time of purchase." *Boothby v. Scales,* 27 Wis. 626, 633, 634.

The trial court properly changed the jury's answer to this question.

(2) The plaintiff had the device in its possession about six months before it rescinded the lease, returned the device, and demanded the money paid for the lease. During that time the plaintiff waited for a period of approximately one month at each of two different times for a demonstrator who was sent from the defendant's factory to aid plaintiff in its attempt to make the device perform the services for which it was procured. Twice during that period of six months the device was returned to the defendant's factory in Philadelphia for repairs. During that period plaintiff constructed new equipment in its plant in an endeavor to make the device work satisfactorily. It was not until all these efforts had failed that the plaintiff finally determined that the device did not comply with the implied warranty and rescinded the lease. Under these circumstances the rescission was within a reasonable time.

(3) Complaint is made because the court did not permit the written lease to be taken to the jury room. This was a matter that rested in the sound discretion of the trial court. *Starke v. Wolf,* 90 Wis. 434, 438, 63 N. W. 755. "It is a power to be exercised with prudence and discrimination. Situations might arise when the jury might be greatly helped by an inspection of some books or writing in evidence. Trial courts are well able to take care of these matters, and it would be an extreme case, with apparent injustice, that would warrant interference by this court." *Wunderlich v. Palatine Fire Ins. Co.* 104 Wis. 382, 386, 80 N. W. 467.

(4) The second time that a demonstrator came to aid the plaintiff in an attempt to make the device work satisfactorily, the parties agreed that the plaintiff Tank Works would pay

the expenses of the trip and $2 an hour for the time of the expert. The trial court denied recovery for these expenses and this compensation solely upon the ground that the defendant was a foreign corporation which was not licensed to do business in Wisconsin.

The device was an article of interstate commerce which was temporarily in the state. By the terms of the lease it was to be returned to Philadelphia at the expiration of one year, unless the lease was renewed. Everything done with reference to this device related to interstate commerce. Although the right to recover these expenses and this compensation is based upon a contract independent of the lease, still it was a contract that related to an article of interstate commerce which required a degree of skill and expert service which could not be procured locally and which could be procured only from the state in which the device was manufactured. To hold that this contract is within the field of intrastate commerce would amount to a regulation, restriction, or prohibition of interstate commerce in that the defendant would be prevented from sending expert service to its customers in order to aid them in the use of this device unless it did so at its own expense, which would impose no inconsiderable burden upon its business in the realm of interstate commerce. *Pfaudler Co. v. Westphal,* 190 Wis. 486, 492, 209 N. W. 700.

The defendant company is entitled to recover the amount which the plaintiff agreed to pay for the expenses and the compensation of this expert. The case is returned to the circuit court with directions to determine the amount due the defendant on its counterclaim and to deduct that amount from the judgment in favor of the plaintiff.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

A motion by the appellant for a rehearing was denied, with $25 costs, on June 18, 1928.