STATE, Respondent, v. WHITE, Appellant.

*No. State 7. Argued May 5, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 676.)

For the appellant there was a brief by *Howard B. Eisenberg,* state public defender, and *Alvin E. Whitaker,* assistant state public defender, and oral argument by *Mr. Whitaker.*

For the respondent there was a brief by *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general, and oral argument by *William L. Gansner,* assistant attorney general.

ROBERT W. HANSEN, J. The three issues raised on this appeal relate to: (1) Change of venue; (2) sufficiency of the evidence; and (3) permitting the weapon to be taken into the jury room. Each is discussed separately.

*Change of venue.*

Defendant claims trial court error in the denial of his motion for change of venue or a continuance because of pretrial publicity.

Prior to the impaneling of the jury, defense counsel inquired as to the procedure to be followed by the trial court on *voir dire* examination as to pretrial publicity. The trial court responded that prospective jurors would

be asked if they had read anything about the case and, if they had, whether they had formed an opinion. If so, the juror would be excused. This test or procedure, which was followed in this case, gave this defendant a more complete safeguard against possible prejudice than is required under decisions of this court[1] or of the United States Supreme Court.[2] In this state it is sufficient " '. . . if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .' "[3] Using this excused-if-opinion-formed procedure, the trial court excused 14 jurors of the 53 called, three for cause and 11 because they had formed an opinion or had a feeling about the case from reading or hearing about it.

Upon completion of the jury selection process, defendant's counsel moved for a change of venue or continuance on the basis of pretrial publicity noting that very few of those who had been chosen as jurors had read nothing about the case. That is not a ground requiring change of venue. If it were, the murder of a public figure anywhere in these United States, with accompanying syndicated press and network radio-television coverage, might render it impossible to draw a jury in any of the 50 states except from among those who cannot read or those who elected not to read or listen to the news of

[1] *See: Beavers v. State* (1974), 63 Wis. 2d 597, 615, 217 N. W. 2d 307, this court holding: ". . . Forming an opinion by itself does not indicate that one cannot fairly judge the defendant. The important thing is whether the opinion can be set aside and the defendant tried only on the evidence offered at trial. . . ."

[2] *Irvin v. Dowd* (1961), 366 U. S. 717, 723, 81 Sup. Ct. 1639, 6 L. Ed. 2d 751, the high court holding: ". . . To hold that the mere existence of any preconceived notions as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. . . ."

[3] *Beavers v. State, supra,* footnote 1, at page 613, quoting *Irvin v. Dowd, supra,* footnote 2, at page 723.

the day. To have obtained information of the matters at issue through newspapers, radio or television is not a cause of challenge to a prospective juror in this state.[4] As the United States Supreme Court has put the matter, "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. . . ."[5]

Juror exposure to news coverage of events involved in a trial is not, of itself, a proper basis for challenge of motion for change of venue, so there was here no abuse of discretion in the trial court's denial of defendant's initial motion for change of venue.[6] Additionally, it is to be noted that the defendant here apparently failed to accompany the motion for change of venue with copies for the record of the publicity alleged to be prejudicial. Such motion was renewed on post-trial motions, and again denied. Only then, for the first time, did defendant offer news articles from Madison newspapers into evidence. The trial court granted leave for defendant to have the clippings certified for authenticity, submitted into evidence, marked and made part of the record. Whether or not this was done, no clippings of news articles are contained in this record on appeal. Upon a claim that a trial court abused its discretion in denying a motion for change of venue, this court ". . . must look to the evidence presented at the hearing on the motion and examine the original documents to determine wheth-

---

[4] *See: Tucker v. State* (1973), 56 Wis. 2d 728, 735, 736, 202 N. W. 2d 897, this court holding: ". . . The record here does establish that the jurors, or some among them, could remember reading about the case or hearing about it on the radio or television. That establishes knowledge of what was written or said, but that is not enough to rebut the presumption of a prospective juror's impartiality. . . ."

[5] *Irvin v. Dowd, supra,* footnote 2, at page 722.

[6] *Ruff v. State* (1974), 65 Wis. 2d 713, 720, 223 N. W. 2d 446, stating, "[t]he question of change of venue rests in the sound discretion of the trial court," and citing *State ex rel. Hussong v. Froelich* (1974), 62 Wis. 2d 577, 591, 215 N. W. 2d 390.

er, in the view of such evidence, the trial court abused its discretion. . . ."[7] Without the nature of the publicity concerning the crime demonstrated by evidence in the record, there is no way for this court to determine its "inflammatory nature," the first of the factors to be considered before holding that trial court discretion has been abused.[8] Even difficulties encountered in selecting an unbiased jury, not here evident, are no substitute for placing in the record the media accounts complained of. Such difficulties can confirm the effect of articles, held to be inflammatory and bias creating, but where press accounts are alleged to have polluted a local scene, even such difficulties of impanelment do not eliminate the requirement that press or media coverage complained of be specified, identified and made part of the record. An appeal of a denial of change of venue that comes to this court without the record containing the articles and accounts complained about becomes a complaint without substance or foundation as to facts in the record.

*Sufficiency of evidence.*

Defendant argues that the evidence here was insufficient to prove him guilty of the crime of first-degree murder.

The defendant here admits the shooting of the deceased, but claims that such shooting and killing was accidental. Defendant's brief states that ". . . it is not incredible that the defendant did not realize he had a gun in his hand when he swung his fist. . . ." That may be so, although it strains one's credulity to be asked to believe that a person clenched his fist and threw a punch

[7] *Jones v. State* (1974), 66 Wis. 2d 105, 109, 223 N. W. 2d 889.

[8] *Id.* at page 109, this court itemizing ". . . nine factors which this court will consider upon a claim that the trial judge abused his discretion in denying a change of venue in a criminal case," the first such being, " '[1] the inflammatory nature of the publicity concerning the crime; . . .' " (Quoting *State v. Hebard* (1971), 50 Wis. 2d 408, 426, 184 N. W. 2d 156.)

without realizing or remembering that he held a pistol in his clenched fist. But the test is not whether this court believes certain testimony entitled to be believed. That is the function of the jury— ". . . to resolve conflicts in the testimony and to determine which evidence is credible or worthy of belief. . . ."[9] Credibility of witnesses lies within the exclusive province of the trier of fact—here the jury.[10] As we have said many times, when the question of the sufficiency of evidence is presented on appeal in a criminal case, the " '. . . only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt.' "[11] Here it clearly was.

In a first-degree murder case, where the defendant claimed insufficiency of evidence as to intent, our court held that circumstantial evidence can be as forceful as eyewitness testimony and can form a rational basis for conviction.[12] In that case the defendant told the investigating officer that he had a knife and advanced toward the deceased, and the defendant was found a short time later with a knife in his hand. Our court concluded: ". . . The requisite intent [as to first-degree murder] can be inferred from the act of stabbing the deceased alone. The defendant is presumed to intend the natural and probable consequences of his act. . . ."[13] There our

[9] *State v. Zdiarstek* (1972), 53 Wis. 2d 776, 784, 193 N. W. 2d 833.

[10] *Id.* at page 784, citing *Quinn v. State* (1971), 50 Wis. 2d 96, 99, 183 N. W. 2d 61.

[11] *Austin v. State* (1971), 52 Wis. 2d 716, 717, 190 N. W. 2d 887, quoting *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

[12] *Zebrowski v. State* (1971), 50 Wis. 2d 715, 722, 185 N. W. 2d 545, citing *State v. Davidson* (1969), 44 Wis. 2d 177, 199, 170 N. W. 2d 755.

[13] *Id.* at page 722, citing *Gelhaar v. State* (1969), 41 Wis. 2d 230, 243, 163 N. W. 2d 609.

court added: ". . . There was no evidence in this case to rebut that presumption. There was ample evidence on the basis of which the jury could have concluded that the defendant stabbed Roedel during a quarrel. . . ."[14] Substitute a loaded gun for the knife, and the admitted circumstantial evidence in the case before us is the same. The facts here warranted the jury in concluding that the defendant walked over to the car of the deceased with a loaded revolver and shot and killed the deceased with intent so to do.

The only evidence in this record to rebut such presumption or offer an alternative explanation of what occurred is the testimony of the defendant that the loaded pistol accidentally discharged when it hit the top of the car window. The jury could have believed this explanation, but was not required to do so. It had every reason not to if it accepted the testimony of the firearms identification specialist for the state crime laboratory that he was unable to discharge the weapon involved without pulling the trigger, and that the discharge of the pistol involved required a backward trigger pull of approximately two and one-half pounds. Believed by the jury, which was entitled to so accept it, such expert testimony made impossible the conclusion that the pistol was discharged by its bumping against the top of the car window and made incredible the testimony of the defendant that that is what happened. Given this testimony, that of the eyewitnesses, and the circumstantial evidence, the facts and permissible inferences present in this record amply support the jury's finding that the defendant was guilty of first-degree murder.

*Weapon to jury room.*

Defendant claims trial court error in allowing the pistol used by defendant, and introduced as an exhibit at trial, to be sent to the jury room.

---

[14] *Id.* at page 722.

The record indicates that the trial court, prosecuting attorney and defense counsel at the time of trial, conferred on the list of exhibits introduced to determine which were to be submitted to the jury. When item No. 17, the pistol, was reached, defense counsel stated: "No objection, Your Honor." Such unequivocal statement of a lack of objection goes well beyond silence, or a failure to object. We have repeatedly held as to the introduction of evidence that objection must be made as soon as the party complaining might reasonably be aware of the objectionable nature of the evidence and that failure to then and there object constitutes waiver.[15] But here we go beyond waiver to an express statement: "No objection, Your Honor." There are obvious reasons for the trial tactic of defense counsel at trial. The defense claim of an accidental discharge would not be weakened by emphasis upon the fast or quick-firing aspect of the pistol involved. Seeing such relatedness of accidental discharge and fast firing, defense counsel might well see tactical reasons for having the pistol go to the jury room. If, as testified, the weapon did have a quick or hair-trigger type release, defendant had, at the least, nothing to lose by having the gun go to the jury room. Whatever his reasons, that was his decision—to have the gun submitted to the jury without objection. Appellate counsel argues differently. But, unless the competence of trial counsel is an issue, postconviction counsel stands in the shoes and in the position of trial counsel. He cannot change the strategy or battle plan to assert that he would have objected where trial counsel consented. That would

[15] *See: Nadolinski v. State* (1970), 46 Wis. 2d 259, 267, 174 N. W. 2d 483 (as to testimony); *Bennett v. State* (1972), 54 Wis. 2d 727, 735, 196 N. W. 2d 704 (as to breathalyzer test results); and *Coleman v. State* (1974), 64 Wis. 2d 124, 128, 218 N. W. 2d 744 (as to photographic identification).

indeed be Monday-morning quarterbacking, which this court has specifically outlawed.[16]

While not here required, for the sake of completeness, we note that the decision to permit the gun, without cartridges, to go to the jury room was, in any event, within the judicial discretion of the trial judge. Where the gun involved in an attempted murder case was sent by the trial court to the jury room during deliberations, over the objection of defense counsel, our court found no abuse of discretion.[17] Without encouraging such practice, our court held that the evil sought to be avoided was not experimentation with the weapon by the jury, but experimentation prejudicial to the defendant.[18] On the facts there, with the trial court having stated that it " '. . . could not in my mind conjure up any experimentation that the jury could have done in that jury room with that revolver that wasn't done for them here in court, . . .' " our court concluded that, assuming there had been experimentation by the jury, it could not have been prejudicial to the defendant.[19] In the case before

[16] *Lee v. State* (1974), 65 Wis. 2d 648, 657, 658, 223 N. W. 2d 455, this court holding: ". . . To permit postconviction counsel to argue for a different game plan, after the contest is over, would be Monday-morning quarterbacking, whether directed at the trial counsel as quarterback, or, as here, at the trial court as referee. . . ."

[17] *Robinson v. State* (1971), 52 Wis. 2d 478, 190 N. W. 2d 193.

[18] *Id.* at pages 483, 484.

[19] *Id.* at page 485, and at pages 483, 484, this court holding: "Assuming, as contended by defendant, that experimentation was conducted by the jury, could any conceivable experimentation be conducted which would constitute prejudicial error? We think not." And adding, "It is the rule in Wisconsin that permitting exhibits to be taken to the jury room is within the sound discretion of the trial court." (Citing *Payne v. State* (1929), 199 Wis. 615, 227 N. W. 258; *Milwaukee Tank Works v. Metals Coating Co.* (1928), 196 Wis. 191, 218 N. W. 835; *Wunderlich v. Palatine Fire Ins. Co.* (1899), 104 Wis. 382, 80 N. W. 467.)

us, there is no claim by defendant nor anything in the record to suggest any experimentation by the jury with the pistol during deliberations. With the defendant contending that he never put his finger on the trigger or pulled it, it is impossible to see how experimentation with the degree of force necessary to pull the trigger would be prejudicial to his theory of the case. If the jury did experiment and find a very slight pressure sufficient to discharge the weapon, such determination might arguably aid, but could not in any way be prejudicial, to the theory of the case presented by the defense. At any rate, here the choice was for the trial counsel to make as to objecting or consenting. He chose not to object. Substituted counsel on appeal is bound by that decision and, the competence of trial counsel conceded and not challenged, cannot now challenge the decision made and game plan followed by the lawyer who tried the case.

*By the Court.*—Judgment affirmed.